## Case No. 7,740.

KETCHUM et al. v. PACIFIC R. CO. et al.

[4 Dill. 87, note.] [1]

Circuit Court, E. D. Missouri. 1877.

EQUITABLE LIENS — ACCEPTANCE OF ACT OF LEGISLATURE—RAILROAD EARNINGS—PLEDGE OF EARNINGS.

[By the act of the legislature, a certain county was empowered to loan its bonds to a railroad corporation, and it was agreed between the county and the railroad and incorporated in the act of the legislature that the earnings of the railroad shall be devoted to payment of the interest on the bonds. Upon the sale of the property in a foreclosure suit brought by a subsequent mortgagee who had notice, this agreement will be upheld.]

[1] [Affirmed in 101 U. S. 306.]

[This was an intervening petition of St. Louis county in the chancery suit of George E. Ketchum and others against the Pacific Railroad Company. The intervener seeks to establish a charge against the railroad to have the earnings of the same appropriated to the payment of the interest on certain bonds of the county of St. Louis issued under authority of the legislature of Missouri, which bonds were loaned to the railroad company. There was a demurrer to the petition, which was overruled. Case No. 7,739. The case is now heard upon petition, answer, reply thereto, and proofs taken.]

F. J. Bowman and H. A. Clover, for the county.

Cline, Jamison & Day, contra.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. Since the demurrer to the petition of the county was determined, the adverse parties in interest have answered, a reply has been filed, and proofs taken. The facts, as reported by the master, have been accepted by both parties as correct, and upon the question whether, under the legislation applicable to this transaction and upon these facts, the county has an equitable lien or charge upon the property sold under the decree, or upon the earnings of the railroad which was thus sold (all rights of the county having been fully reserved in the decree), elaborate arguments were filed at a late day in the term, too late to allow opportunity for an extended examination or deliberate reflection. As our judgment will not be conclusive, and will not be accepted as such by the parties, it is, perhaps, of little consequence what that judgment may be. We rest it upon what seems to be the manifest and undoubted intrinsic equities arising out of the legislation and peculiar circumstances of the case, without a very close and thorough examination as to whether there are legal obstacles in the way of recognizing and giving effect to these equities.

Upon consideration of the demurrer, we held that the effect of the legislation of the state applicable to this transaction and the acts and contracts of the parties, was to give to the county a lien, statutable in its origin and equitable in its nature, upon the "earnings" of the railroad and upon the road and franchises of the company, as (so to phrase it) the mother of the earnings. We refer to our opinion at that time for a more full expression of our views. Aside from this, and on general principles, if the doctrine laid down by Lord Chancellor Thurlow in Legard v. Hodges, 3 Brown, Ch. 531, 538, "that where parties come to an agreement as to the produce of land, that the land itself will be affected by the agreement," and equity will specifically enforce the

agreement against the party who makes it and all persons with notice—if this doctrine is sound to the extent stated and applied in that case (see same case, 4 Brown, Ch. 421), the county is entitled to have the "earnings" arising from the property specifically applied as provided in the second section of the act of January 7, 1865.

It would become a lien or charge upon the earnings and the road, out of which the earnings must necessarily come, effectual against the company and subsequent mortgagees and purchasers with notice. 2 Story, Eq. Jur. § 1231. Whether the county acquired such a lien, and, if so, whether it would take precedence of the rights of subsequent mortgagees, or be liable to be defeated by a sale under a decree foreclosing such mortgages, are close and difficult questions; and, as above remarked, our judgment is given in favor of the county at this time, that the final disposition of the question may not be delayed, and in accordance with what appears to us to be the equities of the case, without being able, in the pressure of other business, to examine the question, in the light of the facts presented in the report, with that care and·deliberation which we would be glad to do if it were practicable. Let an order or decree be entered declaring that the county has a right to have the earnings appropriated to pay the interest on its bonds, as provided in the second section of the act of January 7, 1865, and that this charge attaches to the property sold under the decree of foreclosure. Decree accordingly.

[NOTE. Upon the appeal of this case to the supreme court, Mr. Justice Harlan delivered the opinion of the court, holding upon the acceptance of the act of the legislature empowering the county of St. Louis to issue the bonds to be loaned to the railroad, by the railroad company and by the county, that an equitable lien was established in favor of the county upon the earnings of the railroad to the extent necessary to meet the interest on the bonds; that the lien or charge exists, not only against·the funds in the hands of the receiver, but against the purchaser under a foreclosure sale. The act of the legislature was notice to all parties. A debtor, who by an agreement with his creditor sets apart a certain portion of a specific fund in the hands of another, and directs this other to apply it in payment to certain creditors, and this arrangement is accepted, it is an appropriation binding upon the parties and all others having notice. Mr. Justice Strong delivered a dissenting opinion, holding that there was nothing in the contract between the railroad and the county, or in the act of the legislature which created an equitable lien upon the earnings of the railroad company or any of its property. Mr. Justice Bradley concurred in the dissent. 101 U. S. 306. Upon the question of the foreclosure of the mortgages of the Pacific Railroad Company, see 3 Fed. 772, 12 Fed. 641, 95 U. S. 1, 101 U. S. 289, 111 U. S. 505, 4 Sup. Ct. 583. Upon the question of the right of certain counties to taxes as against the Pacific Railroad, see Case No. 7,738.]